### GOODWIN *et al.* *v.* MCCORMICK *et al.*

(*City Court of Brooklyn, General Term.* July 1, 1889.)

BUILDING CONTRACTS—ALTERATION—QUANTUM MERUIT.
    Plaintiff made a contract with defendant to build for her certain houses, according to prescribed plans and specifications. During the construction a number of deviations were made from the original plan, with the consent of both parties, but all conditions in the original contract as to times and amounts of payments, as the work progressed, were strictly complied with, and the money received and receipted for by the contractor without objection. No new express contract was en-

tered into. *Held*, that the deviation from the original contract was not such as justified the contractor in setting up a claim of *quantum meruit*, except as to extra work done and extra materials furnished.

Appeal from special term.

The plaintiffs, Michael Goodwin *et al.*, brought suit against defendants, Kate McCormick *et al.*, to foreclose a mechanic's lien. The contractor claimed such change from the original plan of the buildings as to entitle him to set up a claim of *quantum meruit*, while the defendant pleaded a specific contract, except as to extra work. Contractor's claim being allowed, and judgment rendered thereon, defendant Kate McCormick appeals.

Argued before CLEMENT, C. J., and VAN WYCK and OSBORNE, JJ.

*S. A. Underhill*, for appellant. *Fisher & Voltz*, for respondents.

CLEMENT, C. J. This action was brought to foreclose a mechanic's lien affecting premises located in Brooklyn. The appellant, Kate McCormick, is the owner of the property. The respondent Feldmann was the contractor for the erection of five houses on the premises, and the other respondents have mechanic's liens. The case was tried before a referee, who found that Feldmann, in August, 1885, entered into a contract with one James Gardner, the general agent of said Kate McCormick, the owner, to erect the five houses for the sum of $23,400, to be paid for in installments as the work progressed, the final payment, when the work was completed, to be $5,400. The referee further found that, after the work was commenced, the contract was, by mutual consent of the owner and contractor, so far departed from, as to the work to be done, that, as a whole, the work was not substantially that called for by the contract; that such departures involved serious and material increase in the cost; and that the parties did not agree that the work should be done for the contract price, nor for any certain price, nor that the houses should be completed as a condition for the payment of any part of the price. The referee also finds that Feldmann did not entirely complete said houses; that the value of the labor and materials done and furnished was $24,200, and that the payments amounted to $17,200, leaving a balance due of $7,000, with interest; that neither the original contract nor the evidence furnishes *data* from which it can be ascertained what the parties originally estimated or agreed upon to be the value of such of the labor and materials done and furnished as the original contract called for, or what was agreed to be paid therefor, or that any certain sum was agreed to be paid therefor. The referee orders judgment in favor of the lienors, and for the balance, after paying the liens, in favor of Feldmann, the contractor; and the owner, Kate McCormick, appealed from the judgment entered in conformity to the referee's report.

The learned counsel for the respondents Goodwin and Feldmann quotes in his brief from 1 Add. Cont. foot pp. 585, 586, and the law applicable to the points raised on this appeal is there correctly and concisely stated. "If work has been agreed to be done, and materials supplied under a building contract for certain estimated price, and there has subsequently been a deviation from the original plan by consent of the parties, the contract and estimate are not on that account excluded, but are to be the rule of payment, as far as the contract can be traced to have been followed, and the excess only is to be paid for according to the usual rates of charging; but if the original plan has been so entirely abandoned that it is impossible to trace the contract, and to say what part of it shall be applied, the workman may charge for the whole work by measure and value, as if no contract at all had ever been made." We have quoted freely from the report of the referee, and in his own words, and shall also assume that the law is as stated in the foregoing quotation from Addison; but when we examine the testimony we are unable to agree to the findings of fact of the learned referee. It appears that there were many variations from the contract, that such changes were made by consent of the par-

ties, and it also appears that Feldmann, or some witness in his behalf, was able to detail the alterations, and estimate the fair value of each deviation, and that during the progress of the work no new express contract was made. Where the facts are as above stated, then the contract work surely can be traced, and the extra work can be figured out. The contractor, Feldmann, furnished a list of the alterations and values for same: Change of gable-end fence worth $40; basements and fence doors of corner house, ash trim instead of pine, $350; panelled ceilings, $300; wainscotting and cap, instead of chair board, wainscotting back of boilers, he could not give an estimate; seven slate mantels, instead of marble, for which Mr. Gardner paid the bill; parlors and halls, cabinet trimmed, and other extra work on parlor floors, $816; extra work on second floor, cabinet trim in second floor, and wainscotting, raised $181.70; raising upper story of the fifth house, instead of mansard roof, $500; extra doors in corner house, $600; extra skylights, $50. The above claim could not much exceed $2,300. The plumber had an extra bill, itemized, amounting to $485.10. There were other extras, but substantially the changes from the contract have been given in the above statement, and in every case where an alteration was made testimony was or could have been offered showing the value of the extra work. Testimony was also given on behalf of the respondents for the purpose of showing that Mr. Gardner interfered with the workmen, and gave directions, and the conclusion was sought to be drawn that he did the work himself, and not Feldmann; but the testimony is insufficient to justify such a conclusion. According to Feldmann, he once told the workmen to put more cement in the mortar, and on another occasion he told a man to do something around the chimney, and Mr. Feldmann could not remember any other time. The contract called for payments by installments as the work progressed, and every payment was made according to the contract as the work was done, and Mr. Feldmann gave receipts for the payments, of which the following are samples: "March 9, 1886, received $400 on account of plumbing payment. March 20, 1886, received $300 on account of payment on doors when hung." These receipts tend strongly to show that Feldmann, even when the work was well along on the houses, did not claim that he was working on a *quantum meruit.* Even though Gardner was officious, and though he ordered many extras, yet we think on the whole it is clear, as matter of fact, that the work was substantially done under the contract, and that the contract work was traced by the witnesses for the respondents, and also the extra work, and that the value of the extras could be ascertained from their testimony. We therefore hold that the judgment must be reversed on the law and the facts, the order of reference vacated, and a new trial granted, costs to abide the event. All concur.